## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

TRINITY PACKAGING SUPPLY,
LLC,

        Plaintiff,

    v.

COUNTRYWIDE PALLET, INC.
d/b/a SELECT PALLET,

        Defendant.

Civil No. 18-16115 (NLH/JS)

**OPINION**

---

**APPEARANCES:**

DAVID FORNAL
SHAWN DAVID EDWARDS
MASELLI WARREN PC
600 ALEXANDER ROAD
SUITE 3-4A
PRINCETON, NJ 08540

    *Attorney for Plaintiff Trinity Packaging Supply, LLC.*

FRANCIS X. RILEY III
MICHAEL ROWAN
SAUL EWING ARNSTEIN & LEHR LLP
650 COLLEGE ROAD EAST
SUITE 400
PRINCETON, NJ 08540

    *Attorney for Defendant Countrywide Pallet, Inc. d/b/a Select Pallet.*

**HILLMAN**, District Judge

    This is a breach of contract and fraud action concerning an agreement for packaging supplies made between the parties. Presently before the Court is Defendant Countrywide Pallet, Inc. d/b/a Select Pallet's Motion to Dismiss the Complaint Pursuant

to Federal Rule of Civil Procedure 12(b)(2) (the "Motion to Dismiss") and Plaintiff Trinity Packaging Supply, LLC's Motion to File a Sur-Reply Brief. For the reasons discussed herein, this Court will deny Defendant's Motion to Dismiss and grant Plaintiff's Motion to File a Sur-Reply Brief.

## BACKGROUND

The Court takes its facts from Plaintiff's Complaint and the parties' filings as appropriate. According to Defendant's Amended Notice of Removal, Plaintiff is a limited liability company with one member, Anthony Magaraci, whose citizenship is New Jersey. Defendant is a California corporation with its principal place of business in California. Defendant asserts it operates exclusively in California. (Def.'s Mot. to Dismiss 2.)

Plaintiff's Complaint reveals its business consists of wholesale packaging supply. On October 23, 2013 Plaintiff entered into a "Product Supply Agreement" (the "Contract") with a "national warehouse and freight distribution company" (the "Company") to service all of its packaging and packaging supply needs, including pallets. (Pl.'s Compl. ¶ 5.) Plaintiff arranged for Defendant to deliver and retrieve pallets for the Contract. Plaintiff alleges that Defendant agreed it would be "the exclusive broker, procuring agent and point of contact" with the Company. (Pl.'s Compl. ¶ 7.) According to Plaintiff,

all business between Defendant and the Company was to "be processed through" Plaintiff. (Pl.'s Compl. ¶ 7.)

Payment – and the actions of a so-called rogue employee of Defendant – is where the controversy in this case lies. Plaintiff and Defendant agreed Plaintiff would pay Defendant the unit cost per pallet delivered to the Company, but that Defendant would credit Plaintiff for any recycled wooden pallets ("Cores") that Defendant retrieved from the Company. (Pl.'s Compl. ¶ 8.) Depending on the quality of the Cores, Plaintiff could receive more or less in credits. Plaintiff alleges that Defendant circumvented this process by "engaging with a rogue employee of the Company and paying that employee approximately $30,000 cash on [a] monthly basis to permit removal of Cores that would not be reported to Trinity or the Company." (Pl.'s Compl. ¶ 13.) This resulted in over-billing.

Once Plaintiff learned of this issue, Plaintiff terminated its relationship with Defendant. Plaintiff alleges that "the invoices that [it] paid during the entirety of the . . . relationship [with Defendant] have been false, misleading and incorrect." (Pl.'s Compl. ¶ 16.) Plaintiff not only complains of overpayment, but it also complains of damages done to the Contract it had with the Company. As a result of Defendant's conduct, Plaintiff alleges that it had to investigate its entire business with the Company and had to re-bid the Contract. This

resulted in lower prices for the Company and consequently less money for Plaintiff.

Plaintiff filed its Complaint on October 12, 2018 in the Superior Court of New Jersey, Law Division, Camden County. The Complaint contains eight counts, which Plaintiff summarizes as "claims for breach of contract, quantum meruit, fraud, unjust enrichment, tortious interference with prospective economic relations, and conversion." (Pl.'s Opp'n Br. 6.)

Defendant filed a Notice of Removal on November 13, 2018 in this Court. This Court issued an Order to Show Cause on November 14, 2018 requiring Defendant to amend its Notice of Removal to properly plead the citizenship of the parties. Defendant filed an Amended Notice of Removal on November 15, 2018 properly alleging the citizenship of the parties. On November 20, 2018 Defendant filed its Motion to Dismiss. Plaintiff filed opposition, Defendant replied, and Plaintiff filed a Motion to File a Sur-Reply Brief on January 4, 2019. The two motions presently before the court have been fully briefed and are therefore ripe for adjudication.

## ANALYSIS

### A.    Subject Matter Jurisdiction

This Court possesses subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as the parties are diverse and the amount in controversy exceeds $75,000.

## B.   Motion to Dismiss for Lack of Personal Jurisdiction Standard

A defendant may move to dismiss, in lieu of an answer, on grounds that the Court lacks personal jurisdiction to adjudicate a matter concerning a particular defendant.  See FED. R. CIV. P. 12(b)(2).  Once a Rule 12(b)(2) motion is filed, "a plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants."  Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004) (citing Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 368 (3d Cir. 2002)).  See also Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996) ("[O]nce a defendant has raised a jurisdictional defense, a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." (citing Narco Avionics, Inc. v. Sportsman's Mkt., Inc., 792 F. Supp. 398, 402 (E.D. Pa. 1992))).

When an evidentiary hearing is not held, a "plaintiff need only establish a prima facie case of personal jurisdiction." Miller Yacht Sales, 384 F.3d at 97 (citing Pinker, 292 F.3d at 368).  In that case, "a plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor."  Id.  But, even so, "a plaintiff may not 'rely on the bare pleadings alone' in order to withstand a motion to dismiss for lack of personal jurisdiction."  Demetro v. Nat'l Ass'n of Bunco Investigations, No. 14-6521 (KM/SCM), 2017 U.S. Dist.

LEXIS 145061, at *17 (D.N.J. Sept. 7, 2017). A plaintiff must still provide "actual proofs, not mere allegations." Id. (quoting Patterson v. FBI, 893 F.2d 595, 604 (3d Cir. 1990)).

If a plaintiff is successful in doing so, the burden shifts back to the moving defendant. "Once the plaintiff has made out a prima facie case in favor of personal jurisdiction, the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" Mellon Bank PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1226 (3d Cir. 1992) (quoting Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 150 (3d Cir. 1992)).

**C.   Motion to Dismiss for Lack of Personal Jurisdiction**

Defendant argues this case should be dismissed because this Court lacks personal jurisdiction over it or the claims against it. Defendant's arguments can be broken down into two broad categories. First, Defendant argues it is not subject to this Court's general jurisdiction because there are no allegations of continuous and systematic contacts with New Jersey. Second, Defendant argues it is not subject to this Court's specific jurisdiction because it did not purposefully avail itself of the laws of New Jersey. Plaintiff argues this Court can assert specific jurisdiction, but presents no argument on whether the Court may assert general jurisdiction over Defendant.

Before the Court delves into the arguments of the parties, it must put those arguments into context. Rule 4(e) of the Federal Rules of Civil Procedure authorizes a district court to assert personal jurisdiction over a non-resident to the extent permissible under the law of the state where the district court sits. In New Jersey, "courts may exercise jurisdiction over a nonresident defendant to the uttermost limits permitted by the United States Constitution." Nicastro v. McIntyre Mach. Am., Ltd., 987 A.2d 575, 589 (2010), rev'd on other grounds sub nom., J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873 (2011) (citations and internal quotations omitted). "Accordingly, in determining whether personal jurisdiction exists, we ask whether, under the Due Process Clause, the defendant has certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir. 2007).

The determination of whether minimum contacts exist requires an examination of "the relationship among the forum, the defendant, and the litigation." Vertrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co., 75 F.3d 147, 150-51 (3d Cir. 1996) (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)). These "minimum contacts" must have a basis in "some act by which the defendant purposefully avails itself of the privilege of

7

conducting activities within the forum State, thus invoking the benefits and protections of its laws." Asahi Metal Indus. Co., Ltd. v. Sup. Ct. of Cal., 480 U.S. 102, 109 (1987) (internal citations omitted). As its corollary, due process forbids the assertion of jurisdiction over a defendant "with which the State has no contacts, ties, or relations." Int'l Shoe Co., v. Washington, 326 U.S. 310, 319 (1945). Such contacts may be supplied by the terms of the agreement, the place and character of prior negotiations, contemplated future consequences, or the course of dealings between the parties. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 479 (1985).

Because the Defendant's Motion to Dismiss addresses both the Court's general and specific personal jurisdiction, the Court will address each, in turn.

a. General Jurisdiction

Defendant argues it is not subject to this Court's general jurisdiction. Specifically, Defendant argues because it is a California corporation that does not solicit customers in New Jersey, advertise in New Jersey, maintain any assets in New Jersey, or maintain any physical presence in New Jersey it cannot be said to be "at home" in New Jersey. (Def.'s Mot. to Dismiss 4.) Plaintiff presents no argument in opposition. For the sake of completeness, the Court will consider whether it may assert general jurisdiction over Defendant.

General jurisdiction grants the Court the ability to hear "any and all claims" against out-of-state defendants "when their affiliations with the state are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Op., S.A. v. Brown, 564 U.S. 915, 919 (2011). Defendant's activities and affiliations in the forum are not so "continuous and systematic" as to render Defendant essentially at home in New Jersey. See Goodyear Dunlop, 564 U.S. at 919. Defendant is a California corporation that operates solely in California and does not maintain offices or personnel within the State of New Jersey. It appears Defendant's sole contact with New Jersey is with Plaintiff. This is not "continuous and systematic" but limited and focused. Thus, this Court may only assert personal jurisdiction over Defendant if it finds specific jurisdiction.

b. Specific Jurisdiction

Defendant argues this Court cannot assert specific jurisdiction over it. Defendant's argument is essentially that Plaintiff's Complaint does not allege that it "purposefully availed" itself of New Jersey's laws. Defendant points out that the only allegation within the Complaint that explicitly discusses New Jersey is that Plaintiff is a citizen of New Jersey. Moreover, Defendant asserts, the relevant contract obligated it to perform services in California and did not

involve contacts in New Jersey.  Plaintiff disagrees, citing the

fact that Defendant "directed its action toward New Jersey

through its continuous business relationship" with Plaintiff and

the Company and that the relationship produced hundreds of

invoices, reports, and checks.  (Pl.'s Opp'n Br. 7.)  According

to Plaintiff, these communications included the

misrepresentations that are at the very heart of this case.

To determine whether specific jurisdiction is present, the

Court must perform a two-prong test.  First, the Court must

determine whether there have been constitutionally sufficient

minimum contacts between the defendant and the forum.  <u>Burger

King</u>, 471 U.S. at 474.  The requirement for <u>purposeful</u> minimum

contacts is "the constitutional touchstone" of the minimum

contacts analysis.  <u>Id.</u> (emphasis added).

Specific jurisdiction is present only if Plaintiff's cause

of action arises out of Defendant's forum-related activity –

i.e., minimum contacts - such that Defendant "'should reasonably

anticipate being haled into court'" in that forum.  <u>Vetrotex</u>, 75

F.3d at 151 (quoting <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444

U.S. 286, 297 (1980)).  Generally, "[t]he determination of

whether minimum contacts exist requires an examination of the

relationship among the forum, the defendant and the litigation

in order to determine whether the defendant has 'purposefully

directed' its activities toward residents of the forum."

Vetrotex Certainteed Corp., 75 F.3d at 150.  Put another way, specific jurisdiction exists when a defendant's "activity . . . takes place in the forum State and is therefore subject to the State's regulation."  Goodyear Dunlop, 564 U.S. at 919.

Purposeful availment, however, does not exist when the contacts are "random, fortuitous, or attenuated."  Burger King, 471 U.S. at 479-80.  Nor does it exist when the contacts are "between the plaintiff (or third parties) and the forum State."  Walden v. Flore, 571 U.S. 277, 284 (2014).  Specific jurisdiction requires that the defendant have sufficient "suit-related conduct" to "create a substantial connection with the forum state."  Walden, 571 U.S. at 284.  Finally, the contacts must have some nexus with the claims.  "'Specific jurisdiction is invoked when the cause of action arises from the defendant's forum related activities.'"  Vetrotex Certainteed Corp., 75 F.3d at 151 (quoting N. Penn. Gas Co. v. Corning Nat. Gas Corp., 897 F.2d 687, 690 (3d Cir. 1990), cert. denied, 498 U.S. 847 (1990)).

Second, "if 'minimum contacts' are shown, jurisdiction may be exercised where the court determines, in its discretion, that to do so would comport with 'traditional notions of fair play and substantial justice.'"  Vetrotex Certainteed Corp., 75 F.3d at 150-51 (citing Int'l Shoe Co., 326 U.S. 310; Farino, 960 F.2d at 1222.).  Once a court has determined minimum contacts, a

defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp., 471 U.S. at 477. A court "in 'appropriate [cases]' may evaluate 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'" Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)). Fair play and substantial justice would not be served if litigation is "'so gravely difficult and inconvenient'" that a defendant would be at a "'severe disadvantage.'" Id. (quoting The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 18 (1972)).

To state it another way, the exercise of specific jurisdiction is permissible where: (1) the defendant purposely directed his activities at the forum state; (2) the plaintiff's claim arises out of and relates to at least one of those specific activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice. Isaacs v. Ariz. Bd. of Regents, 608 F. App'x 70, 74 (3d Cir. 2015) (citing Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007)).

Here, the case involves contract and intentional tort claims.  Thus, the Court notes some specific case law applicable to those claims or factual scenarios.  While a contract with an out-of-state party <u>alone</u> cannot automatically establish sufficient minimum contacts, in considering whether specific jurisdiction exists, a court considers not only any contract between the parties but also "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing."  <u>Burger King</u>, 471 U.S. at 479.  Moreover, "[i]n contract cases, courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract <u>or its breach</u>."  <u>Telcordia Tech., Inc. v. Telkom SA Ltd.</u>, 458 F.3d 172, 177 (3d Cir. 2006) (quoting <u>Gen. Elec. Co. v. Deutz A.G.</u>, 270 F.3d 144, 150 (3d Cir. 2001)) (emphasis in original).  In cases "where a long-term relationship has been established, actual territorial presence becomes less determinative."  <u>Id.</u> (citing <u>Gen. Elec. Co.</u>, 270 F.3d at 151).

The Court also notes case law relevant to a case concerning intentional tort claims.  Stemming from the Supreme Court's decision in <u>Calder v. Jones</u>, 465 U.S. 783, 788-90 (1984), the effects test for intentional torts requires that a plaintiff show that: (1) Defendant committed an intentional tort; (2) Plaintiff felt the brunt of the harm in the forum such that the

13

forum can be said to be the focal point of the harm suffered by Plaintiff as a result of that tort; (3) Defendant expressly aimed its tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.  Isaacs, 608 F. App'x at 74-75 (relying on Calder, 465 U.S. at 788-90).

### i. Specific Personal Jurisdiction for Contract Claims

Defendant argues that this Court does not possess specific personal jurisdiction over Plaintiff's contract claims. Defendant asserts it did not (1) solicit or negotiate the contract with Plaintiff in New Jersey, (2) never had a physical presence in New Jersey, (3) did not perform any part of its contract in New Jersey, and (4) did not commit any wrongful acts in New Jersey.  Thus, Defendant argues, the only basis to assert personal jurisdiction is that it has contracted with a New Jersey company – and that is not enough.

Plaintiff, on the other hand, argues the Court does possess jurisdiction over the contract claims.  Plaintiff argues there existed a continuous business relationship between it and Defendant for a number of years that involved a contract with it, a New Jersey company.  Plaintiff also argues that, regardless of whether Defendant ever had a physical presence in New Jersey, Defendant sent "hundreds of emails," "participated in numerous telephone calls," and sent weekly or monthly

invoices, reports, and checks.  (Pl.'s Opp'n Br. 13.)  These
communications, according to Plaintiff's Complaint, are the
basis for Plaintiff's contract claims.  (Pl.'s Compl. ¶¶ 24-26,
32-33, 47-49.)

The Court finds this case is sufficiently similar to <u>Burger
King</u> as to allow the Court to find minimum contacts here.  As in
<u>Burger King</u>, the fact that Defendant never physically entered
New Jersey is not an impediment to assertion of personal
jurisdiction by this Court.  471 U.S. at 476 ("Jurisdiction in
these circumstances may not be avoided merely because the
defendant did not <u>physically</u> enter the forum State." (emphasis
in original)).

Most important to the <u>Burger King</u> court was the fact that
the contract was a multi-year relationship "that envisioned
continuing and wide-reaching contacts" with the forum state,
there Florida.  <u>Id.</u> at 479.  That included making payments to
and receiving instruction and oversight from Miami.  <u>Id.</u>  Here,
the parties entered into an agreement that endured for five
years.  (Pl.'s Compl. ¶ 2.)  Part of that relationship – the
most relevant to the claims here presented - required Defendant
to collect Cores, determine the proper credit, and send
invoices, reports, and checks to Plaintiff concerning those
Cores.  This was a weekly or monthly occurrence over the span of
five years.  Moreover, the parties voluntarily entered into and

accepted the terms of this agreement, making the "quality and nature" of Defendant's relationship to Plaintiff anything but "random, fortuitous, or attenuated." Burger King, 471 U.S. at 479-80. In other words, Defendant knew contact with New Jersey was a part of the relationship from the beginning.

Defendant's alleged actions caused reasonably foreseeable injuries to the Plaintiff corporation in New Jersey. (Pl. Compl., 3.) It is - at the very least - presumptively reasonable for Defendant to be called to account there for such injuries. Id. Further, like Burger King, the actions of Defendant - sending fraudulent invoices, reports - caused foreseeable injuries to Plaintiff, in New Jersey. Defendant knew that (1) Plaintiff's operations were conducted and supervised from its headquarters in New Jersey, (2) that all relevant notices and payments were to be sent to Plaintiff's headquarters in New Jersey, (3) that agreements were made in and enforced from New Jersey, and (4) that key negotiating decisions and communications via mail, phone, or email were made in and from the New Jersey. See, e.g., Burger King, 471 U.S. at 480-81.

This court "cannot conclude that [New Jersey has] no 'legitimate interest in holding [Defendant] answerable on a claim related to' the contacts. . . . established in that State."

Burger King, 471 U.S. at 483 (quoting Keeton v. Hustler
Magazine, Inc., 465 U.S. 770, 776 (1984)).

Maybe most importantly, the case law states: "[i]n contract
cases, courts should inquire whether the defendant's contacts
with the forum were instrumental in either the formation of the
contract or its breach."  Telcordia Tech., Inc. v. Telkom SA
Ltd., 458 F.3d 172, 177 (3d Cir. 2006) (quoting Gen. Elec. Co.
v. Deutz A.G., 270 F.3d 144, 150 (3d Cir. 2001)) (emphasis in
original).  The most instrumental contacts related to the
contract claims are the allegedly fraudulent reports, invoices,
checks, emails, and phone calls.  Those contacts were allegedly
purposefully made from California to Plaintiff in New Jersey.[1]

Defendant's cited case law, which it asserts support its
personal jurisdiction argument, are inapposite.  The Vetrotex
case is distinguishable for many reasons.  It involved a
Pennsylvania plaintiff supplier who sent fiberglass material to
a California defendant facility with maintenance of the
relationship and payment occurring at the plaintiff's California
office.  Vetrotex Certainteed Corp., 75 F.3d at 149.  The only
relevant contacts with the forum, here Pennsylvania, was that

---

[1] The Court notes that it is of no moment whether Plaintiff could
have received email or calls in locations other than New Jersey
through wireless devices or voice over internet protocol.
Defendant allegedly knew it was directing these communications
to New Jersey where Plaintiff was headquartered and conducted
its business.

some calls were made by the California defendant to the Pennsylvania plaintiff in the course of negotiating the supply contract. Id. The dearth of contacts in Vetrotex is dissimilar from the amount of relevant contacts found here.

The other cases cited by Defendant are also inapposite, as they point to the similarities between Vetrotex and their facts to find no personal jurisdiction. The line of cases cited by Defendant involve no allegations that:

> (1) the defendant solicited the contract or initiated the business relationship leading up to the contract; (2) the defendant sent anything other than communications via e-mail to the forum state; or (3) the defendant engaged in extensive post-sale contacts with the Plaintiffs in the forum state.

Team First Consulting, LLC v. Hangliter, No. 07-311 (DRD), 2007 U.S. Dist. LEXIS, at *15 (D.N.J. Apr. 27, 2007). See also Siegmesiter v. Benford, No. 15-7099, 2017 U.S. Dist. LEXIS 84802, at *10 (D.N.J. June 1, 2017) (same); GMAC Real Estate, LLC v. Gate City Real Estate Co., No. 05-2253 (AET), 2005 U.S. DIST. LEXIS 24531, at *9-10 (D.N.J. Oct. 18, 2005) (same).

As discussed supra, there is no indication that Defendant solicited the contract or initiated the business relationship. But, Defendant sent allegedly fraudulent invoices, reports, checks, emails, and calls to Plaintiff in New Jersey. And, the Court finds these are "extensive post-sale contacts," unlike the ones in Defendant's case that were for informational purposes.

18

Accordingly, this Court finds there are sufficient minimum contacts to support the contract claims at issue here.

### ii. Intentional Tort Claims

Defendant argues that Plaintiff cannot meet the Calder effects test, while Plaintiff argues it is met in this case. The Court will address each element of the test to determine whether minimum contacts have been shown as to the intentional torts asserted. First, the Court considers whether Plaintiff has established an intentional tort. Defendant does not challenge whether the allegations state an intentional tort, but essentially argue they are duplicative of the contract claims. Thus, the Court finds Plaintiff has adequately alleged intentional torts in its complaint under Count III, fraudulent inducement, Count IV, fraudulent misrepresentation, Count VI, interference with contractual relations, and Count VII, conversion. Whether they are duplicative of Plaintiff's contract claims may be properly addressed via a separate motion and does not affect whether they have been adequately stated.

Second, the Court addresses whether Plaintiff felt the brunt of the harm in New Jersey, such that New Jersey could be considered the focal point of the harm. Defendant argues the brunt of the harm was suffered in California, because the performance of the contract was in California and any alleged harm, here business loss, was to California-based business.

This is an over-simplified reading of the allegations here. While the harm may have been to business conducted in California, the brunt of the harm was felt in New Jersey at Plaintiff's headquarters.  It is there that allegedly fraudulent invoices, reports, checks, emails, and calls were received. (Certification in Opp'n ¶¶ 9, 11-12, 14-16.)  While the alleged theft of Cores occurred in California, the alleged harm was felt in New Jersey.

Finally, the Court must consider whether New Jersey was the focal point of Defendant's tortious conduct.  Defendant asserts that the conduct was directed at California, as that was where actions concerning the Cores was conducted.  The Court agrees, as the Complaint is alleged, Defendant supplied pallets solely in California.  The Court also agrees that Defendant allegedly hired someone within the Company to take pallets and that also occurred solely in California.

But these facts animate only a part of the claim.  The actual conduct complained of is the fraud and conversion.  And that fraud and conversion could only be committed through contact with Plaintiff in New Jersey.  Plaintiff presents in its Certification in Opposition facts which would suggest fraudulent invoices were sent on a weekly or monthly basis from California to New Jersey.  (Certification in Opp'n ¶ 9.)  Plaintiff also presents facts which would suggest fraudulent reports – denoting

the amount of Cores retrieved – and fraudulent checks – paying for the wrong amount of Cores – were sent on a weekly or monthly basis from California to New Jersey. (Certification in Opp'n ¶¶ 11-12.) Moreover, various other correspondence including letters, emails, and phone calls were directed by Defendant to Plaintiff in New Jersey. (Certification in Opp'n ¶¶ 14-16.)

Because it appears Defendant was permitted to take Cores from the Company's California facilities, the alleged fraud could only be committed by misrepresenting – through a communication directed at New Jersey – the amount to Plaintiff. Similarly, the alleged conversion could only be committed by misrepresenting the amount of Cores taken to Plaintiff. In other words, Defendant's argument places it in the position of the Company worker who was allegedly complicit in Defendant's alleged scheme. That individual's conduct occurred solely in California as he or she did not send allegedly false communications to New Jersey. The Defendant is not this individual, and appears to have engaged in conduct emanating beyond the borders of California.

This Court finds the <u>Calder</u> test has been met here. Accordingly, this Court finds Plaintiff has established minimum contacts related to the intentional tort claims asserted.

### iii. Fair Play and Substantial Justice

Now that the Court has determined that minimum contacts have been established for Plaintiff's claims, the Court must consider whether asserting personal jurisdiction will comport with notions of fair play and substantial justice. A court "in 'appropriate [cases]' may evaluate 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'" Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)). Fair play and substantial justice would not be served if litigation is "'so gravely difficult and inconvenient'" that a defendant would be at a "'severe disadvantage.'" Id. (quoting The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 18 (1972)). Defendant argues that these factors favor it, making assertion of specific personal jurisdiction by this Court improper. Plaintiff disagrees. The Court will address each factor in turn.

The first factor is a consideration of the burden on Defendant of litigating the matter in New Jersey. Defendant is a corporation operating solely in California. This litigation

requires cross-country travel of Defendant's counsel, witnesses, and documents. This is a burden. Defendant's proposed solution is to require the litigation of these claims in California, where it has brought suit against Plaintiff for claims relating to the present action. But, that would require Plaintiff to carry the same burden Defendant complains of here. In other words, neither New Jersey nor California is a convenient location for <u>both</u> parties. While the Court finds this factor favors Defendant, it notes there is no solution to the inconvenience of litigation between entities on opposite sides of the country.

The second factor is a consideration of New Jersey's interest in adjudicating this action. Defendant argues the conduct only took place in California by a California entity, making California the forum with a greater interest in this litigation. But, there are two problems presented by this argument. One, it does not address the factor directly which queries the <u>forum's</u> interest. Two, as described supra, the necessary acts to complete the allegedly wrongful conduct occurred in New Jersey and its harmful effects were felt in New Jersey. It was only when the allegedly fraudulent communications were received by Plaintiff in New Jersey that it could be said any of the wrong occurred or any of the harm happened. New Jersey has an interest in regulating fraud

visited upon its entities and providing proper compensation. California also has an interest in policing the alleged bad acts of its entities or the harms visited upon them.   New Jersey has an interest in this matter at least as strong, if not stronger than California's interest.   This favors asserting jurisdiction here.

The third is Plaintiff's interest in convenient and effective relief.   New Jersey offers that here.   The fourth is what the most efficient resolution of these controversies would be.   New Jersey offers the most efficient path.   While California could also offer that here, the New Jersey action was the first-filed, and thus requires the Court to give it greater weight.   Defendant's California action may always be transferred and consolidated with this action.   There is no jurisdictional issue that this Court finds at this point which would prevent this Court from hearing those claims.[2]

On balance, it appears the factors favor New Jersey.   The Court notes that New Jersey does present some inconvenience to Defendant.   It requires some travel and logistical preparations. But, it is not so grossly difficult as to put Defendant here at

---

[2] The Court finds that "shared interest of the several States in furthering fundamental substantive social policies" does not bear on the present case, or, at the very least, does not favor either forum.

a severe disadvantage.  The Court finds it can and should assert specific personal jurisdiction as to these claims, so it will.

Because the Court finds it may assert personal jurisdiction, it will deny as moot Plaintiff's request for jurisdictional discovery.  The Court has also considered the arguments made in Plaintiff's proposed sur-reply brief and Defendant's responsive letter.  The Court finds the arguments contained therein concerning Plaintiff's conduct in the California litigation brought by Defendant consistent with its position here.  Otherwise, the Court finds that the arguments made therein are irrelevant to the determination of whether this Court is able to assert specific personal jurisdiction over these claims.  As such, the Court will grant Plaintiff's Motion for Leave to File a Sur-Reply brief.

## CONCLUSION

For the reasons discussed herein, the Court will deny Defendant's Motion to Dismiss and grant Plaintiff's Motion to File a Sur-Reply Brief.

An appropriate Order will be entered.


Date:  June 26, 2019                    s/ Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.